GERARD P. FOX (SBN 151649)
gfox@gerardfoxlaw.com
CHAKA OKADIGBO (SBN 283050)
cokadigbo@gerardfoxlaw.com
GERARD FOX LAW P.C.
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Tel: (310) 441-0500
Fax: (310) 441-4447

Attorneys for Plaintiffs
EFFICIENT FRONTIERS, INC. d/b/a RESERVE INTERACTIVE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFFICIENT FRONTIERS, INC., a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MARCHESE, an individual; and DOES 1-50,<br><br>Defendants. | Case No. 2:16-cv-6920<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Efficient Frontiers, Inc. ("RESERVE INTERACTIVE"), through its attorneys, brings this action and alleges against Defendants Joseph Marchese and DOES 1-50 as follows:

## JURISDICTION AND VENUE

1. This Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), in that the case arises out of claims for trademark infringement under the Lanham Act (15 U.S.C. § 1051 et seq.).

2. This court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a) and 1338(a) and (b).

3. Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and has caused damages to Plaintiff in this district.

4. The Court has personal jurisdiction over Defendants because Defendants have committed acts of infringement and unfair competition in this district and Defendants have sufficient minimum contacts with this district such that the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Among other things, Defendants have advertised, offered to sell and sold in the State of California products that infringe on Plaintiff's family of trademarks. Alternatively, Defendants have directed, authorized or participated in the infringing activities at issue in this complaint such that they should be held personally liable for such activities.

5. Personal jurisdiction exists over Defendants because, on information and belief, Defendants conduct business in California and in this judicial district, have purposefully directed action to California and this district, or have otherwise availed themselves of the privileges and protections of the laws of the State of

California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

## THE PARTIES

6. Joseph Marchese is a resident of the State of New York and is a member of the Board of Directors, as well as a co-founder, of RESERVE MEDIA.

7. Defendant-Marchese is sued in his capacities as the chairman of RESERVE MEDIA, and an investor in RESERVE MEDIA as well as in his personal capacity.

8. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein names as DOES 1-50, inclusive, are unknown to Plaintiff, which therefore sues said Defendants by such fictitious names. RESERVE INTERACTIVE will seek leave of this Court to amend this Complaint to include their proper names and capacities when they have been ascertained. RESERVE INTERACTIVE is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants participated in and are in some manner responsible for the acts described in this Complaint.

## GENERAL ALLEGATIONS

9. RESERVE INTERACTIVE incorporates all prior allegations as if set forth fully herein.

10. Since at least as early as 1998, RESERVE INTERACTIVE has been registering and using its federal trademarks and other marks in connection with computer software solutions in the hospitality industries. Through long and continuous use, RESERVE INTERACTIVE has established valuable rights and associated goodwill in its marks and other intellectual property.

11. RESERVE INTERACTIVE provides software tools to the hospitality industry and is an innovator in so doing. Specifically, RESERVE INTERACTIVE develops and sells computer software for the commercial and noncommercial hospitality markets.

**COMPLAINT FOR DECLARATORY RELIEF**
**[DEMAND FOR JURY TRIAL]**

12. RESERVE INTERACTIVE is a seasoned expert that has been helping organizations optimize their hospitality operations for more than fifteen years. Combining expertise with personalized consultation and industry-recognized support, RESERVE INTERACTIVE has helped more than 15,000 users across 14 markets—including hotels, cultural institutions, golf and private clubs, sports and entertainment venues, resorts, wineries, convention centers as well as restaurants—successfully grow and manage their hospitality operations.

13. Among its business solutions is dynamic and intuitive software for catering and event management, dining-reservation management, and table management. The software allows for the management of single unit and multi-unit restaurants, on- and off-premise catering operations, and event facilities. Enterprise configurations accommodate shared customer databases and aggregated financial reporting. The integrated-software platform allows for the management of catered events and restaurants in one system. Add-on modules include group rooms control, labor scheduling, and club management. The software currently interfaces with leading industry-related technology products including point-of-sale systems, paging systems, room-diagramming software, food-and-beverage management systems, accounting software, and e-mail programs.

14. Several of RESERVE INTERACTIVE's software solutions are most closely tailored to the restaurant industry, and some have been marketed as solutions that interface directly with clients, customers, and diners who want to make reservations for private dining or private events. Most of these software solutions have prominently featured the word "RESERVE."

15. RESERVE INTERACTIVE has registered a series of trademarks bearing a "RESERVE" component, as follows:

16. A ▼RESERVE INTERACTIVE ® mark for "Computer software for database management used in the hospitality industry" in International Class 9, and for "Design, development, implementation and maintenance of software for others in

3

the hospitality industry" in International Class 42, which federal trademark it obtained on June 19, 2007 under Registration No. 3,253,603;

17.   A RESERVE ANYWHERE® mark for "Management and compilation of computerized databases" in International Class 35, which federal trademark it obtained on September 25, 2007 under Registration No. 3,298,635;

18.   A RESERVE Q® mark for "Computer software for database management used in the hospitality industry" in International Class 9, which federal trademark it obtained on October 9, 2012 under Registration No. 4,222,058;

19.   A RESERVE Q® mark for "Design, development, implementation and maintenance of software for others in the hospitality industry" in International Class 42, which federal trademark it obtained on March 5, 2013, under Registration No. 4,297,221;

20.   A RESERVE INTERACTIVE® mark for "Computer software for database management used in the hospitality industry" in International Class 9, which federal trademark it obtained on August 13, 2013, under Registration No. 4,382,898; and

21.   A RESERVE CLOUD® mark for "software as a service (SAAS) services featuring software for use by others in the hospitality industry, namely, off-premises event catering and on-premises event management," in International Class 42, which federal trademark it obtained on January 26, 2016 under Registration No. 4892191.

22.   In addition to federally registered marks, RESERVE INTERACTIVE has used the following common-law trademarks/service marks in connection with its products and services, beginning as early as 2005 and no later than 2011: ReServe It; ReServe University; ReServe It 2.0; ReServe Gateway; and ReServe Cloud.

4
**COMPLAINT FOR DECLARATORY RELIEF**
**[DEMAND FOR JURY TRIAL]**

23. Collectively, RESERVE INTERACTIVE's federally registered marks are referred to as the "Registered RESERVE Marks," and the federally registered marks together with the common-law service marks are referred to as the "RESERVE Marks" or "RESERVE family of marks."

### A. RESERVE MEDIA and Defendants' Unauthorized Use of the "RESERVE" Marks

24. On or about October 2014, RESERVE MEDIA launched publicly, offering a mobile phone application ("app") that facilitates the making of dining reservations by individuals at select restaurants featured in the app. Like RESERVE INTERACTIVE's "RESERVE" software, the "RESERVE" app enables individuals to make dining reservations at restaurants of their choosing. RESERVE MEDIA uses the name "RESERVE" as a company name and as a product name, at least in the case of its mobile app.

### B. Defendants were Informed that they were Infringing On RESERVE INTERACTIVE's "RESERVE" Marks

25. On or about October 29, 2014, RESERVE INTERACTIVE's legal counsel informed Defendants by letter, through RESERVE MEDIA's then-legal counsel, that their use of "RESERVE" as a company name and as a product name constitutes infringes on RESERVE INTERACTIVE's RESERVE family of marks. The letter requested that RESERVE MEDIA cease and desist from using the RESERVE to conduct business and as a product name. The letter further advised RESERVE MEDIA that any continued use of the RESERVE name as a mark would be deemed to be a willful trademark infringement. A true and correct copy of the October 29, 2014 letter is attached hereto as Exhibit A.

26. Notwithstanding their receipt of the October 29, 2014 letter from RESERVE INTERACTIVE's counsel, RESERVE MEDIA has continued to use the name "RESERVE" as a company name and to as a name for software products that it offers or sales to hospitality industry consumers or entities, particularly

5

within the restaurant segment of the industry, as in the case of RESERVE MEDIA's mobile app. RESERVE MEDIA's decision to continue using "RESERVE" as a company name was authorized, directed by, or participated in, Defendants.

27. On or about July 6, 2015, RESERVE MEDIA filed a declaratory relief action in the U.S. District Court for the Central District of California, seeking a declaration that their use of the "RESERVE" name does not infringe upon RESERVE INTERACTIVE's trademarks. A true and correct copy of RESERVE MEDIA's Complaint is attached hereto as Exhibit B.

28. On or about August 28, 2015, RESERVE INTERACTIVE filed counterclaims for trademark infringement and unfair competition, contending that RESERVE MEDIA's use of the "RESERVE" mark infringed on RESERVE INTERACTIVE's RESERVE family of marks and constituted unfair competition. The fullest extent of RESERVE INTERACTIVE's counterclaims against RESERVE MEDIA is detailed in its counterclaims. A true and correct copy of RESERVE INTERACTIVE's counterclaims is attached hereto as Exhibit C.

29. As of October 2015, RESERVE MEDIA, under the direction and authorization of Defendants, introduced a product that it now calls "Reserve for Restaurants." Reserve for Restaurants is a software solution that enables restaurants to manage their front of the house dining operations in terms of accommodating dining reservations and managing their tables. This product directly competes with the table management and dining reservations modules of RESERVE INTERACTIVE's RESERVE ANYWHERE and RESERVE CLOUD products, as well as with RESERVE INTERACTIVE's Table iQ product.

30. RESERVE MEDIA also offers restaurants a "widget" that enables their customers to make dining reservations directly on the restaurants' websites. The widgets prominently feature the name "RESERVE" on the restaurants' websites and is a similar product to RESERVE INTERACTIVE's RESERVE IT

and RESERVE Q products, both of which enable guests to make reservations directly on the websites of restaurants of their choosing.

31.  RESERVE MEDIA calls itself "RESERVE" and introduces itself to the world as "RESERVE," by way of its domain name (www.reserve.com), its advertising, marketing, pitching, offering or selling of its products to potential users of its mobile app, to potential purchasers or users of its Reserve for Restaurants product, and to restaurants seeking to use its widget product to enable consumers to make reservations on the restaurants' websites.

32.  Based on RESERVE MEDIA's use of the "RESERVE" family name (without any other letter, word, or symbol) in its products, hospitality industry consumers will believe that RESERVE MEDIA's products are part of or related to the goods and services that RESERVE INTERACTIVE offers.

**C.  Defendants Directed, Participated In, or Authorized RESERVE MEDIA's Use of the Name "RESERVE" Knowing, or Having Reason to Know, That it Infringes on RESERVE INTERACTIVE's RESERVE Marks.**

33.  Joe Marchese and Greg Hong, the two founders of RESERVE MEDIA, and Defendants were the guiding spirit and central figures in Reserve's adoption and usage of the trade name "RESERVE" with respect to RESERVE MEDIA's decision to use the name for its products and services, as well as for a company name.  On information and belief, the decision to use "RESERVE" as a company name and in connection with RESERVE MEDIA's offering of goods and services was done to capitalize on the goodwill and reputation in the hospitality industry of RESERVE INTERACTIVE's "RESERVE" products and services.

34.  The existence of RESERVE INTERACTIVE's Registered RESERVE marks was public information and therefore easily accessible through at least a search on the website of the United States Patent and Trademark Office ("USPTO").

35. RESERVE MEDIA, Defendants had access to counsel that could have easily discovered the existence of RESERVE INTERACTIVE's Registered RESERVE trademarks, notwithstanding their abilities to search for this information themselves. Nevertheless, each of these persons or entities failed to conduct a search or to ensure that their counsel performed a thorough search.

36. Defendants knowingly authorized and directed, and caused RESERVE MEDIA to use the name "RESERVE" in a manner that infringes upon RESERVE INTERACTIVE's RESERVE marks, which infringement is described herein and in RESERVE INTERACTIVE's counterclaims against RESERVE MEDIA.

**D.  Defendants' Responsibility for RESERVE MEDIA's Infringing Activities Based on Alter Ego Theories of Liability**

37. Defendant Marchese directly owns ten to fifteen percent of Reserve Media, over which he exercises significant influence with respect to Reserve Media's strategic business decisions, product development, marketing, and fundraising.

38. Defendant Marchese also partially owns Human Venture Capital ("Human Capital"), a company that, on information and belief, has a substantial investment in Reserve Media, and over which he exercises influence with respect to the decision of Human Capital to invest in Reserve Media.

39. On information and belief, Defendants are the primary actors in RESERVE MEDIA's past and present efforts to raise money from investors. In this capacity, Defendant Marchese utilizes his personal network of investors and celebrities to raise capital for RESERVE MEDIA and pull the strings with respect to deciding when and when not to have RESERVE MEDIA funded.

40. On information and belief, RESERVE MEDIA for the majority of time that it has been in operation did not have a chief financial officer.

41.     On information and belief, Defendants caused RESERVE MEDIA to be undercapitalized for intended company undertakings in anticipation of claims that RESERVE MEDIA knowingly violated RESERVE INTERACTIVE's intellectual property rights.

42.     On information and belief, Defendants knowingly caused RESERVE MEDIA to be undercapitalized in an attempt to have RESERVE MEDIA avoid debts and judgments.

43.     On information and belief, Defendants have purposefully underfunded RESERVE MEDIA after learning of RESERVE MEDIA's willful infringement and unauthorized use of RESERVE INTERACTIVE's RESERVE Marks.

44.     On information and belief, Defendants created RESERVE MEDIA as a sham entity designed to defraud investors, creditors, and RESERVE INTERACTIVE.

45.     Based on information and belief, Defendants and RESERVE MEDIA failed to maintain adequate corporate minutes for much its existence.

46.     Based on information and belief, Defendants had effective domination and control of RESERVE MEDIA's board of directors.

47.     Based on information and belief, Defendant-Marchese authorized and directed Greg Hong, RESERVE MEDIA's Chief Executive Officer, co-founder, and a member of the board, to use the name "Reserve" in RESERVE MEDIA's products, services, advertising, and social media presence.

48.     On information and belief, RESERVE MEDIA essentially functions as a facade for a dominant shareholder, Defendant Marchese, and other Defendants, to direct the company with little oversight and no check on Defendant-Marchese's significant power and authority.

49.     As corporate officers or directors of RESERVE MEDIA, Defendants are personally liable for RESERVE MEDIA's actions constituting trademark infringement, false designation of origin, and unfair competition.

**FIRST CLAIM FOR DECLARATORY RELIEF**

50. RESERVE INTERACTIVE incorporates all prior allegations as if set forth fully herein.

51. A real and actual controversy has arisen and now exists between the parties as to whether Defendants are the guiding spirit behind the wrongful conduct alleged herein or the central figure in the challenged corporate activity.

52. As a direct and proximate cause of Defendants' conduct, RESERVE INTERACTIVE has been damaged and will continue to be damaged.

53. RESERVE INTERACTIVE desires a judicial determination and declaration that Defendants are personally liable for trademark infringement [15 U.S.C. § 1125(a) and California common law trademark infringement], false designation of origin (15 U.S.C. § 1125(a)), and unfair competition claims [California Business and Professions Code § 17200 *et seq*.], based on their authorization of, participation in, and direction of, the activities that are the bases for RESERVE MEDIA's liability for these same causes of action.

54. As owners and operators of RESERVE MEDIA, Defendants are directly liable for the trademark, false designation of origin, and copyright claims.

55. RESERVE INTERACTIVE has been damaged and will continue to be damaged by Defendants' infringing conduct.

26. RESERVE INTERACTIVE is entitled to an injunction prohibiting Defendants from continuing the wrongful practices described above.

56. RESERVE INTERACTIVE is also entitled to profits and damages arising from Defendants' wrongful use of a mark confusingly similar to the RESERVE Marks.

57. RESERVE INTERACTIVE is informed and believes, and on that basis alleges, that Defendants' conduct was willful, wanton, malicious, and in conscious disregard of RESERVE INTERACTIVE's rights, thereby justifying an award of punitive or exemplary damages in an amount according to proof at trial.

## SECOND CLAIM FOR RELIEF

58. RESERVE INTERACTIVE restates and incorporates by reference each of the foregoing paragraphs.

59. Defendants, through the conduct described above, have engaged in unfair competition by committing unfair, fraudulent, and deceptive acts within the meaning of California Business and Professions Code § 17200.

60. RESERVE INTERACTIVE desires a judicial determination and declaration that Defendants are personally liable for trademark infringement [15 U.S.C. § 1125(a) and California common law trademark infringement], false designation of origin (15 U.S.C. § 1125(a), and unfair competition claims [California Business and Professions Code § 17200 *et seq*.] based on the alter ego theories of liability asserted herein.

61. As a consequence of Defendants' misconduct, RESERVE INTERACTIVE has been damaged and is likely to be further damaged, and is entitled to relief as set forth below.

62. RESERVE INTERACTIVE lacks an adequate remedy at law.

63. RESERVE INTERACTIVE is entitled to an injunction prohibiting Defendants from continuing the wrongful practices described above.

## PRAYER FOR RELIEF

RESERVE INTERACTIVE prays that the Court enter judgment in favor of RESERVE INTERACTIVE and against Defendants on all claims for relief, and grant RESERVE INTERACTIVE the following relief:

A. A declaration that Defendants' acts were intentional or in conscious disregard of RESERVE INTERACTIVE's rights, thus justifying an award of treble or enhanced damages where appropriate;

B. A declaration that Defendants' acts were willful, wanton, malicious, or in conscious disregard of RESERVE INTERACTIVE's common

1      law trademark rights, thus justifying an award of punitive or
2      exemplary damages.
3  C.  An order awarding RESERVE INTERACTIVE restitution of all
4      amounts obtained by Defendants by means of their wrongful acts
5      described above.
6  D.  An order awarding RESERVE INTERACTIVE its costs and attorney
7      fees incurred in prosecuting this action;
8  E.  An award of pre-judgment interest, as appropriate.
9  F.  An award of such other relief as the Court may determine just and
10     proper.

Dated: September 14, 2016             GERARD FOX LAW

                                       /s/Gerard P. Fox
                                      GERARD P. FOX
                                      Attorneys for Plaintiff EFFICENT FRONTIERS, INC.

**COMPLAINT FOR DECLARATORY RELIEF**
**[DEMAND FOR JURY TRIAL]**