DYLAN RUGA (SBN 235969)
JI-IN LEE HOUCK (SBN 280088)
STALWART LAW GROUP
11620 Wilshire Blvd., 9th Floor
Los Angeles, California 90025
Telephone:  (310) 954-2000
Email:     dylan@stalwartlaw.com
Email:     jiin@stalwartlaw.com

STEVEN D. MANNING (SBN 091149)
MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017
Telephone:  (213) 624-6900
Email:  SDM@manningllp.com

Attorneys for Defendant
JOE MARCHESE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFFICIENT FRONTIERS, INC., a Wisconsin corporation,<br><br>             Plaintiff,<br><br>     vs.<br><br>JOSEPH MARCHESE, an individual; and DOES 1-50,<br><br>             Defendants. | Case No. 2:16-cv-6920 DDP (AGRx)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO 28 USC 1927**<br><br>Hearing Information<br>Judge:  Hon. Dean D. Pregerson<br>Date:    November 28, 2016<br>Time:   10:00 a.m.<br>Courtroom:  9C<br><br>Action Filed:  September 14, 2016<br>Discovery Cut-off:  None set<br>Pre-Trial Conf.:  None set<br>Trial Date:  None set |

STALWART LAW GROUP

MOTION TO DISMISS AND FOR SANCTIONS

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 28, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Dean D. Pregerson in Courtroom 9C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Joseph Marchese will bring on for hearing his Motion to Dismiss the First Amended Complaint and For Sanctions Against Plaintiff's Counsel Pursuant to 28 USC 1927, on the grounds that: (i) Plaintiff's First Amended Complaint in this action amounts to impermissible claim splitting, and (ii) monetary sanctions should be awarded against Plaintiff's counsel for their bad faith in connection with the filing of the First Amended Complaint.

This motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Declaration of Dylan Ruga; all pleadings filed; and upon such other matters and argument as may be presented to the Court at the time of the hearing.

This Motion is made following the pre-filing conference of counsel pursuant to Local Rule 7-3, which took place on October 25, 2016.

Dated:  October 31, 2016                    STALWART LAW GROUP


                                             By:   /s/ Dylan Ruga
                                                    DYLAN RUGA
                                             Attorneys for Defendant
                                             JOE MARCHESE

STALWART
LAW GROUP

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3      This lawsuit must be dismissed because it is an improper attempt by

4  plaintiff, Efficient Frontiers, Inc. ("EFI"), to assert claims that, although

5  completely unfounded, should have been asserted in a related case captioned

6  *Reserve Media, Inc. v. Efficient Frontiers, Inc.*, Central District of California Case

7  No. 15-5072 DDP (AGRx) (the "Earlier Lawsuit").  The Earlier Lawsuit was filed

8  in July 2015; discovery has closed and trial is scheduled to begin on December 13,

9  2016.

10      This lawsuit, which was filed in September 2016, seeks to hold Joe

11  Marchese personally liable for any judgment entered against Reserve in the Earlier

12  Lawsuit.  Mr. Marchese is on Reserve's Board of Directors but otherwise has very

13  little day-to-day involvement with the operations at Reserve.  Nevertheless, EFI

14  claims that Mr. Marchese should be on the hook personally for any damages

15  awarded in the Earlier Lawsuit because he allegedly (i) directed, participated in, or

16  authorized Reserve's use of the RESERVE trademark, and (ii) is the alter-ego of

17  Reserve.  Mr. Marchese denies EFI's claims.

18      Ultimately, however, the Court need not reach the merits of EFI's claims

19  against Mr. Marchese because the doctrine against claim-splitting bars EFI from

20  filing this second lawsuit when it could have asserted these claims in the Earlier

21  Lawsuit.  This is especially true here because EFI's decision to file a second

22  lawsuit—as opposed to asking for leave to amend its claims in the Earlier

23  Lawsuit—is a clear attempt to avoid the deadline established for amending the

24  pleadings in the Earlier Lawsuit.  *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (9th Cir.

25  1977) ("[T]he court must insure that the plaintiff does not use the incorrect

26  procedure of filing duplicative complaints for the purpose of circumventing the

27  rules pertaining to the amendment of complaints and demand for trial by jury.")

28  (internal citations omitted); *Cook v. C.R. England, Inc.*, 2012 WL 2373258, at *9

STALWART
LAW GROUP

1  (C.D. Cal., June 21, 2012) (Wu, J.) (dismissing second action with prejudice and

2  noting that "courts must be vigilant in deterring plaintiffs who attempt to split

3  claims between multiple suits in order to evade procedural rules.")

4        Accordingly, the Court should dismiss this lawsuit with prejudice and issue

5  monetary sanctions against EFI's counsel pursuant to 28 USC § 1927.  Sanctions

6  are warranted because this lawsuit clearly is intended to vex and harass Mr.

7  Marchese, as evidenced by the fact that: (i) counsel for Mr. Marchese specifically

8  told EFI's counsel that the claims asserted against Mr. Marchese are barred by the

9  claim-splitting doctrine; (ii) EFI's counsel participated in a meet and confer

10  conference with Mr. Marchese's counsel prior to the filing of the motion to dismiss

11  the original complaint, but EFI's counsel never indicated that it intended to file a

12  First Amended Complaint, thus causing Mr. Marchese's counsel to spend

13  unnecessary time and expense preparing the first motion to dismiss; and (iii) in the

14  First Amended Complaint, EFI alleges that Mr. Marchese should be found

15  personally liable for infringing EFI's "Reserve Interactive" word mark, even

16  though this Court already has determined that the mark is unenforceable as a

17  matter of law.

18  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

19        **A.     The Earlier Lawsuit**

20        The Earlier Lawsuit was filed on July 7, 2015.  Dkt. No. 18-2.  It was filed

21  by Reserve against EFI and sought a declaration that Reserve's use of the

22  RESERVE trademark does not infringe upon any of EFI's trademarks.  *Id.*

23        On August 28, 2015, EFI asserted its operative First Amended

24  Counterclaims against Reserve, which accused Reserve of trademark infringement

25  and related claims.  Dkt. No. 18-3.

26        This Court issued a Scheduling Order that established deadlines in the

27  Earlier Lawsuit.  Request for Judicial Notice ("RJN"), Ex. 1.  Specifically, the

28  deadline to amend the pleadings or add parties was March 1, 2016.  *Id.*  The

STALWART
LAW GROUP

1  discovery deadline was August 12, 2016.  *Id.*  Trial is scheduled to commence on

2  December 13, 2016.  *Id.*

3       Joe Marchese was identified in Reserve's initial disclosures served on

4  October 30, 2015, and was deposed by EFI in April 2016.  RJN, Ex. 2 at p. 5 (point

5  number 10) & Ex. 3 at p. 3 (subheading C).  EFI never sought to leave to amend its

6  Counterclaims in the Earlier Lawsuit to assert claims against Mr. Marchese.

7      **B.**    **This Related Lawsuit**

8       This lawsuit was filed on September 14, 2016, and seeks a declaration that

9  Mr. Marchese is personally liable for any damages awarded against Reserve in the

10  Earlier Lawsuit.  Dkt. No. 1 at ¶¶ 53 & 60.  On October 17, 2016, Mr. Marchese

11  filed a motion to dismiss the original complaint.  Dkt. No. 15.  Rather than

12  opposing that motion, EFI filed a First Amended Complaint, which asserts the

13  same theories against Mr. Marchese as the original complaint.  Dkt. No. 18 at ¶¶ 69

14  & 77.

15  **III.**    **LEGAL STANDARD**

16       The doctrine against claim-splitting is based on the notion that a party is "not

17  at liberty to split up his demand, and prosecute it by piecemeal, or present only a

18  portion of the grounds upon which special relief is sought, and leave the rest to be

19  presented in a second suit, if the first fails.  There would be no end to litigation if

20  such a practice were permissible."  *United States v. Haytian Republic*, 154 U.S.

21  118, 125 (1894); *see also Adams v. California Dep't of Health Servs.*, 487 F.3d

22  684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553

23  U.S. 880, 904 (2008) (explaining that parties have "no right to maintain two

24  separate actions involving the same subject matter at the same time in the same

25  court and against the same defendant.").

26       In determining whether the claim-splitting doctrine applies, courts apply an

27  analysis similar to claim preclusion and thus "must assess whether the second suit

28

MOTION TO DISMISS AND FOR SANCTIONS

1    raises issues that should have been brought in the first." *Adams*, 487 F.3d at 688.

2    To do this, courts must "examine whether the causes of action and relief sought, as

3    well as the parties or privies to the action, are the same." *Id*. at 689.

4          To resolve the first inquiry, courts examine the following four criteria, which

5    were developed in the context of claim preclusion: "(1) whether the rights or

6    interests established in the prior judgment would be destroyed or impaired by

7    prosecution of the second action; (2) whether substantially the same evidence is

8    presented in the two actions; (3) whether the two suits involve infringement of the

9    same right; and (4) whether the two suits arise out of the same transactional

10   nucleus of facts." *Id*.  "The last of these criteria is the most important." *Id*.

11   **IV.    DISCUSSION**

12          **A.    The Causes of Action and Relief Sought Are the Same**

13          Turning to the most important factor (factor four) first, it is undisputed that

14   this lawsuit and the Earlier Lawsuit arise out of the same transactional nucleus of

15   facts.  Indeed, EFI admitted as much in the Notice of Related Civil Case it filed on

16   September 14, 2016.  Dkt. No. 4 at 2:18-20 ("The instant action seeks a declaration

17   from the Court that Defendant Joe Marchese be held personally liable for the <u>same</u>

18   <u>activities</u> that constitute infringement and unfair competition <u>that are the subject of</u>

19   <u>the [Earlier Lawsuit]</u> . . . .") (emphasis added); *see also Adams*, 487 F.3d at 689-90

20   (concluding second lawsuit arose from the same nucleus of facts where it was

21   based on the same underlying facts as the first lawsuit but added additional

22   defendants and theories of recovery); *Estrada v. City of San Luis*, 2008 WL

23   3286112, at *2 (D. Ariz., Aug. 7, 2008) (finding that this factor of the claim-

24   splitting analysis was satisfied and noting that "[t]he fact that Plaintiffs have

25   asserted different legal theories in the two actions does not change this

26   conclusion.").

27

28

MOTION TO DISMISS AND FOR SANCTIONS

1    EFI also admits in its Notice of Related Civil Case that factor two, which
2    looks at whether substantially the same evidence is presented in the two actions, is
3    satisfied.  Dkt. No. 4 at 2:24-3:2 ("[B]oth actions 'call for a determination of the
4    same or substantially identical questions of law and fact.  Each cases raises *inter*
5    *alia*, (i) whether [Reserve] is liable for the activities that give rise to EFI's
6    counterclaims against [Reserve] in the [Earlier Lawsuit] such as to create an initial
7    foundation for Joe Marchese's personal liability in [this lawsuit]; and (ii) whether
8    Joe Marchese authorized, directed or participated in the activities that are the
9    subject of the [Earlier Lawsuit] and that underlie EFI's claims of trademark
10   infringement and unfair competition.") (emphasis added) (internal citation
11   omitted); *see also Estrada*, 2008 WL 3286112, at *3 ("The second factor considers
12   whether substantially the same evidence is presented in the two actions.  The
13   evidence need only be similar, not identical, for this factor to apply.").
14   Factor one, which asks whether the rights or interests established in the
15   Earlier Lawsuit would be destroyed or impaired by prosecution of this action, is
16   met because any factual findings regarding Reserve's alleged trademark
17   infringement in the Earlier Lawsuit will have preclusive effect in this action.  *See*
18   *Bojorquez v. Abercrombie & Fitch, Co.*, __ F. Supp. 3d __, 2016 WL 3693798, at
19   *5 (C.D. Cal., June 16, 2016) (concluding that the first factor of the claim-splitting
20   test was met because the factual findings in the first action "will likely have issues
21   preclusive effect" in the second action).  Furthermore, allowing this action to
22   proceed would "render meaningless" the Court's Scheduling Order in the Earlier
23   Litigation, which established March 1, 2016 as the deadline for any amendments to
24   the pleadings.  *See Estrada*, 2008 WL 3286112, at *3 (concluding that the first
25   factor was satisfied because "prosecution of the Second Action would render
26   meaningless the Court's order denying Plaintiffs leave to amend the complaint in
27   the First Action.").
28

5
MOTION TO DISMISS AND FOR SANCTIONS

1    Finally, factor three—whether the two suits involve infringement of the

2  same right—is satisfied because, in both lawsuits, EFI seeks compensatory

3  damages arising from Reserve's alleged infringement of EFI's trademarks.  *See*

4  *Adams*, 487 F.3d at 691 (noting that "Adams seeks substantially the same relief in

5  both actions—compensatory, exemplary, and punitive damages for the reopening

6  of the background investigation and the withdrawal of her conditional offer of

7  employment, allegedly in violation of her statutory and constitutional rights, and a

8  declaratory judgment that CDHS unlawfully reopened her background

9  investigation and withdrew her conditional offer of employment."); *Bojorquez*, __

10  F. Supp. 3d at __, 2016 WL 3693798, at *5 ("In both cases, Bojorquez seeks

11  redress for Abercrombie's purported unlawful mandate that she use her wages to

12  buy Abercrombie clothes.").

13    Because each of the four factors is satisfied, it follows that the causes of

14  action and relief sought in this case are the same as in the Earlier Lawsuit.  This

15  part of the claim splitting analysis is met.

16    **B.    Mr. Marchese is in Privity With Reserve**

17    The second part of the claim-splitting analysis looks at whether "the parties

18  or privies to the action, are the same."  *Adams*, 487 F.3d at 689.

19    In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Supreme Court identified six

20  categories of non-party relationships that are sufficient to justify a finding of

21  preclusion. One of those categories is if "the nonparty was adequately represented

22  in the prior litigation by someone with the same interests who was a party."

23  *Taylor*, 553 U.S. at 894.

24    Under this standard, courts have no problem concluding that employees are

25  adequately represented by—and thus in privity with—their employers.  *See, e.g.,*

26  *Bennett-Bagorio v. City and County of Honolulu*, 2014 WL 2966860, at *10 (D.

27  Hawai'i, Jan. 28, 2014) (concluding that 10 new defendants named in the second

28  action were in privity with the defendants named in the first action because they

MOTION TO DISMISS AND FOR SANCTIONS

"were employed by the same local government entities . . . and therefore share an identity of interest, which the [defendants in the first action] adequately represented."); *Agha-Khan v. United States of Am.*, 2015 WL 5734380, at *5 (E.D. Cal., Sept. 28, 2015); *MGA Ent'mt, Inc. v. Mattel, Inc.*, 2011 WL 5007955, at *4 (C.D. Cal., Oct. 20, 2011) (finding that a senior employee of Mattel was in privity with the company for preclusion purposes); *Hyytinen v. Morhous*, 2015 WL 917621, at * (W.D. Wash., Mar. 3, 2015) ("The employer/employee relationship is sufficient to establish privity.")

The same result should follow here because Mr. Marchese is alleged to be much more than an ordinary employee of Reserve.  Dkt. No. 18 at ¶ 8 (stating that Mr. Marchese has been sued "in his capacities as an agent, officer, director, investor-shareholder, and corporate promoter of Reserve Media, Inc.").  Indeed, Mr. Marchese's close relationship with Reserve, and alleged ability to control the company, are the exact reasons why EFI filed the second action.  *See id.* at ¶ 42 ("Defendants, and each of them, acting as agents, officers and/or directors of Reserve Media, Inc., so dominated over Reserve Media, Inc. that separate personalities of Reserve Media, Inc. and Defendants, and each of them, ceased to exist.") & ¶ 47 ("Defendant-Marchese directly owns ten to fifteen percent of Reserve Media, Inc. over which he exercises significant influence with respect to the company's strategic business decisions, product development, marketing, and fundraising.").  Under these circumstances, it is clear that Mr. Marchese is in privity with Reserve.  *Roca Labs, Inc. v. Century Sciences, LLC*, 2014 WL 11775477, at *4 (S.D. Fl., June 16, 2014) (in trademark infringement case, finding executives in privity with their company for purposes of claim-splitting analysis, where plaintiff sought to hold the individuals personally liable for the damages based on the allegation that they "directed, controlled, participated in, and have been the moving forces behind the infringing activities").

MOTION TO DISMISS AND FOR SANCTIONS

1    Finally, lest any doubt remain, EFI has alleged that Mr. Marchese should be

2    held personally liable as the alter-ego of EFI.  Dkt. No. 18 at ¶¶ 47-65 & 77 ("EFI

3    desires a judicial determination and declaration that Defendants are personally

4    liable for trademark infringement . . . based on the alter ego theories of liability

5    asserted herein.").  This allegation is a concession that Mr. Marchese and Reserve

6    are in privity.  *Nolen v. J.P. Morgan Chase & Co.*, 2016 WL 5794575, at *3 (S.D.

7    Miss., Sept. 30, 2016) (explaining that plaintiff "named the defendants in her

8    complaint as 'alter-egos' of each other, thereby confessing they are in privity.")

9    In light of the foregoing, it is clear that Mr. Marchese was adequately

10   represented in the Earlier Action by Reserve.  It follows that he is in privity with

11   Reserve and this part of the claim-splitting analysis is satisfied.

## C.    The Court Should Dismiss This Lawsuit

13   Because EFI has engaged in impermissible claim-splitting, the Court has

14   discretion to dismiss this action, to stay it pending resolution of the Earlier

15   Lawsuit, to enjoin EFI from proceeding with it, or to consolidate both actions.

16   *Adams*, 487 F.3d at 688.  Despite these available options, the Ninth Circuit has

17   made clear that "[d]ismissal of the duplicative lawsuit, more so than the issuance

18   of a stay or the enjoinment of proceedings, promotes judicial economy and the

19   comprehensive disposition of litigation."  *Id.* at 962 (internal quotation marks

20   omitted).  The *Adams* court thus affirmed the district court's decision to dismiss

21   the duplicative action with prejudice, explaining that doing so "protect[ed] the

22   parties from vexatious and expensive litigation and [served] the societal interest in

23   bringing an end to disputes."  *Id.* at 693.

24   Other district courts routinely dismiss duplicative actions with prejudice.

25   *See, e.g., Estrada*, 2008 WL 3286112, at *4 ("The record clearly demonstrates that

26   the First and Second Actions are duplicative.  Under the present circumstances, the

27   Court concludes that dismissal of the Second Action with prejudice is

28   appropriate."); *Bojorquez*, __ F. Supp. 3d __, 2016 WL 3693798, at *6 ("[T]he

1    Court finds that the [second lawsuit] violates the claim splitting doctrine. This

2    claim is therefore DISMISSED WITH PREJUDICE."); *Bennett-Bagorio*, 2014

3    WL 296860, at *11 ("Having concluded that the claim-splitting doctrine applies to

4    the 1AC and that the two-part test to find a duplicative complaint is satisfied, the

5    Court hereby dismisses the 1AC with prejudice.").

6        Dismissal is particularly appropriate here because, not only did EFI engage

7    in impermissible claim-splitting, but it did so specifically to avoid asking for leave

8    to file an amended complaint in the Earlier Lawsuit. *Walton*, 563 F.2d at 71

9    ("[T]he court must insure that the plaintiff does not use the incorrect procedure of

10   filing duplicative complaints for the purpose of circumventing the rules pertaining

11   to the amendment of complaints and demand for trial by jury.") (internal citations

12   omitted); *Cook*, 2012 WL 2373258, at *9 (dismissing second action with prejudice

13   and noting that "courts must be vigilant in deterring plaintiffs who attempt to split

14   claims between multiple suits in order to evade procedural rules.").

15       **D.    The Court Should Issue Monetary Sanctions Against EFI's**

16       **Counsel**

17       28 U.S.C. § 1927 states that "[a]ny attorney . . . who so multiplies the

18   proceedings in any case unreasonably and vexatiously may be required by the

19   court to satisfy personally the excess costs, expenses, and attorneys' fees

20   reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927

21   sanctions require a finding of bad faith. *Soules v. Kauaians for Nukolii Campaign*

22   *Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988). "Bad faith is present when an

23   attorney knowingly or recklessly raises a frivolous argument." *Id*. at 1185-86.

24   "Tactics undertaken with the intent to increase expense or delay may also support a

25   finding of bad faith. Even if an attorney's arguments are meritorious, his conduct

26   may be sanctionable if in bad faith." *New Alaska Dev'mt Corp. v. Guetschow*, 869

27   F.2d 1298, 1306 (9th Cir. 1989) (internal citations omitted). Here, EFI's counsel

28   has acted in bad faith for the three reasons that follow.

1.      <u>EFI's Counsel Was Put On Notice That EFI's Claims Against</u>
<u>Mr. Marchese Are Barred by the Claim-Splitting Doctrine</u>

As noted above, EFI filed its original complaint against Mr. Marchese on September 14, 2016.  Dkt. No. 1.  On **October 11, 2016**, Mr. Marchese's counsel sent EFI's counsel an email that said, in relevant part: "[W]e intend to file a motion to dismiss the lawsuit you filed on behalf of EFI against Joe Marchese.  You clearly filed it in order to avoid asking the court to amend your cross-complaint in the underlying Reserve/EFI case.  This attempt to make an end-run around the procedural rules amounts to impermissible claim-splitting.  See *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007), and its progeny."  Declaration of Dylan Ruga ("Ruga Decl."), ¶ 2 & Ex. A.  Three days later—on **October 14th**—the parties' counsel had a telephonic conference where Mr. Marchese's counsel once again emphasized that the EFI's claims are barred by the claim-splitting doctrine.  *Id.* at ¶ 3.  On the following Monday—**October 17th**—Mr. Marchese's counsel filed a motion to dismiss EFI's complaint on the ground that EFI's claims are barred by the claim-splitting doctrine.  *Id.* at ¶ 4 & Dkt. No. 15 at p. 1 ("[T]he Court need not reach the merits of EFI's claims against Mr. Marchese because the doctrine against claim-splitting bars EFI from filing this second lawsuit when it could have asserted these claims in the Earlier Lawsuit.  This is especially true here because EFI's decision to file a second lawsuit—as opposed to asking for leave to amend its claims in the Earlier Lawsuit—is a clear attempt to avoid the deadline established for amending the pleadings in the Earlier Lawsuit.").

Thus, by the time EFI filed its First Amended Complaint against Mr. Marchese on October 24th, EFI's counsel had been warned on three separate occasions that its claims were barred by the claim-splitting doctrine.  EFI's counsel to continue to pursue the claims anyway was, at a minimum, reckless.  *See B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) ("recklessness plus

1  knowledge was sufficient to justify the imposition of § 1927 sanctions"); *Plata v.*

2  *Darbun Enters., Inc.*, 2010 WL 3184298, at * (S.D. Cal., Aug. 13, 2010) ("a

3  finding of recklessness plus knowledge of the rules and applicable law is

4  sufficient" to justify § 1927 sanctions).

5            2.     <u>Counsel for EFI Did Not Inform Mr. Marchese's Counsel That</u>

6                      <u>EFI Would File a First Amended Complaint</u>

7       As explained above, Mr. Marchese's counsel met and conferred with EFI's

8  counsel prior to filing a motion to dismiss the original complaint.  At no time

9  during that conference—or any time after that—did EFI's counsel inform Mr.

10  Marchese's counsel that EFI would file a First Amended Complaint.  Ruga Decl.,

11  ¶¶ 3, 5. Instead, EFI's counsel lulled Mr. Marchese's counsel into preparing and

12  filing the motion to dismiss, only to wait until the 11th hour[1] to file the amended

13  complaint, which mooted Mr. Marchese's motion.  This tactic demonstrates EFI's

14  counsel's subjective bad faith.

15            3.     <u>EFI's Counsel Continues to Assert Claims for Infringement of</u>

16                      <u>EFI's RESERVE INTERACTIVE Word Mark, Despite this</u>

17                      <u>Court's Conclusion That the Mark is Unenforceable</u>

18       On October 21, 2016, in its order granting Reserve's motion for partial

19  summary judgment, this Court held that "EFI's 'Reserve Interactive' mark is a

20  descriptive mark that lacks secondary meaning.  Accordingly, the mark is not

21  protectable as a matter of law."  Ruga Decl., ¶ 6 & Ex. B at p. 12.

22       On October 24, 2016, EFI's counsel filed the First Amended Complaint in

23  this action and continued to assert that Mr. Marchese should be held personally

24  liable for Reserve's infringement of, among other things, the RESERVE

25

26

27  [1] Literally.  EFI's First Amended Complaint was filed at 11:43 p.m. on the

28  deadline.

1 INTERACTIVE word mark. Dkt. 18 at ¶¶ 20, 23, 25, 46, 53, 74.[2] These

2 allegations—which were made after the Court's ruling that the mark is

3 unenforceable as a matter of law—are frivolous on their face, and EFI's counsel's

4 inclusion of them in the First Amended Complaint is at best reckless.[3] *Soules*, 849

5 F.2d at 1185-86 ("Bad faith is present when an attorney knowingly or recklessly

6 raises a frivolous argument.").

7     4. <u>Mr. Marchese Incurred $14,012.50 in Fees Defending Against</u>

8     <u>EFI's Baseless Claims</u>

9     To date, Mr. Marchese has incurred $14,012.50 in attorneys' fees defending

10 against EFI's baseless claims. Ruga Decl., ¶ 7 & Ex. C. EFI's counsel should be

11 sanctioned in that amount. 28 U.S.C. §1927 ("Any attorney . . . who so multiplies

12 the proceedings in any case unreasonably and vexatiously may be required by the

13 court to satisfy personally the excess costs, expenses, and attorneys' fees

14 reasonably incurred because of such conduct.").

15 **V. CONCLUSION**

16     This lawsuit is a thinly-disguised attempt by EFI to obtain insurance in the

17 event it is awarded damages in the Earlier Lawsuit that Reserve cannot afford to

18 pay. If EFI truly believes its allegations have merit, it should have asked for leave

19 to amend the Earlier Lawsuit. It did not do that, apparently because it cannot

20 demonstrate good cause to modify the Scheduling Order; filing this lawsuit to

21

22

23 [2] The RESERVE INTERACTIVE word mark, which has Registration No.
4.382,898, is specifically identified in the First Amended Complaint at paragraph
24 20 and incorporated into the defined terms "RESERVE Marks" and "RESERVE
25 Family of Marks." Dkt. 18 at ¶¶ 20, 23.

26 [3] At worst, EFI's counsel knowingly asserted the frivolous allegations. This
27 conclusion is difficult to escape, given that Mr. Marchese's counsel put EFI's
counsel on notice of the frivolous allegations on October 25th but EFI's counsel
28 did nothing to retract them.

1  evade clear procedural requirements, however, simply is improper.  Accordingly,

2  the Court should dismiss this lawsuit with prejudice and issue sanctions in the

3  amount of $14,012.50 against EFI's counsel pursuant to 28 USC § 1927 for

4  unreasonably and vexatiously multiplying the proceedings.

5

6                                                    *Respectfully submitted*,

7  Dated:  October 31, 2016                STALWART LAW GROUP
8

9                                                    By:   /s/ Dylan Ruga
10                                                          DYLAN RUGA
                                                     Attorneys for Defendant
11                                                   JOE MARCHESE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS AND FOR SANCTIONS